UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ADALBERTO LEPE DIAZ,<br><br>Petitioner(s),<br>v.<br><br>BRUCE SCOTT, et al.,<br><br>Respondent(s). | CASE NO. C26-3853-KKE<br><br>ORDER GRANTING HABEAS PETITION |

Petitioner has been detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") since July 2026, and an immigration judge ("IJ") denied bond because she found that Petitioner was a flight risk. Because the factors considered by the IJ do not rationally bear on Petitioner's likelihood to appear for immigration proceedings, the Court finds that the IJ abused her discretion. The Court will therefore grant the petition for writ of habeas corpus and order the Government to release Petitioner from custody.

## I. BACKGROUND

Petitioner Adalberto Lepe Diaz, a native and citizen of Mexico, first entered the United States on February 17, 2002, when he was encountered by United States Border Patrol and voluntarily returned to Mexico. Dkt. No. 7 ¶ 3; Dkt. No. 1-1 at 21. Petitioner reentered the United States without inspection or admission around March 2005. Dkt. No. 1-1 at 21; *see* Dkt. No. 7 ¶ 4. Since then, Petitioner has lived in the country with his wife and their three children, United States

citizens who were born in the country in 2005, 2011, and 2019. Dkt. No. 1-1 at 21–30, 85. Since 2016, Petitioner and his family have lived in Idaho; in 2019, Petitioner purchased a home in Coeur d'Alene, where he lives with his family. *Id.* at 22, 35–36, 82. Petitioner's parents, lawful permanent residents, live in Illinois. *Id.* at 26, 82, 85. Members of petitioner's extended family—including siblings and nephews, some of whom are United States citizens—also live in the country. *See* Dkt. No. 1-1 at 40, 47–49

Since he entered the country over 21 years ago, Petitioner has worked and paid taxes. *Id.* at 21–22, 84. For 14 years, Petitioner worked as a cook; he then worked in construction. *Id.*; *see* Dkt. No. 7 ¶ 5. In addition to his home, Petitioner owns an automobile and other assets. Dkt. No. 1-1 at 22, 84. Petitioner has no criminal history. *Id.* at 33; *see* Dkt. No. 5-2 at 5 (I-213 stating Petitioner "has no known criminal history"). Petitioner's eldest child is a sophomore in college working towards becoming a nurse; his middle child is a high schooler with medical issues that require ongoing medical treatment; and Petitioner's youngest just began first grade. Dkt. No. 1-1 at 24–25. Petitioner and his family have been active members of a Coeur d'Alene church for over fifteen years. *Id.* at 45, 50. Attached to his habeas petition, Petitioner submitted numerous letters of support from family, friends, employers, customers, coworkers, neighbors, fellow parishioners, and other community members—letters that Petitioner had submitted as evidence at his bond hearing before IJ Tammy Fitting. Dkt. No. 1-1 at 11, 35–67; *see* Dkt. No. 1 ¶ 25. Those letters describe Petitioner as a hard-working, responsible, and trusted member of his community and a devoted and relied-upon member of his family. *See* Dkt. No. 1-1 at 35–67.

On July 10, 2026, Immigration and Customs Enforcement ("ICE") officers arrested and detained Petitioner while he was driving to work in Couer d'Alene. *Id.* at 22–23; Dkt. No. 5-2 at 3–4. According to the Form I-213 "Record of Deportable/Inadmissible Alien" that the Government filed in the record, ICE officers had "discovered" Petitioner on June 16, 2026, "while

reviewing I-9 employment eligibility verification forms" from Petitioner's employer. Dkt. No. 5-2 at 3. After arresting and detaining Petitioner on July 10, 2026, ICE issued a Notice to Appear ("NTA") and booked him into the NWIPC in Tacoma, Washington. Dkt. No. 7 ¶ 7; Dkt. No. 5-1.

On August 4, 2026, Petitioner applied for cancellation of removal. Dkt. No. 1-1 at 78–116; *see* Dkt. No. 7 ¶ 8. Petitioner's application was denied by an IJ at a hearing on September 9, 2026. Dkt. No. 7 ¶ 8; Dkt. No. 5-4. Petitioner appealed that decision, and the appeal remains pending before the Board of Immigration Appeals ("BIA"). Dkt. No. 7 ¶ 8; Dkt. No. 1-1 at 118–20.

Petitioner appeared for a bond hearing before IJ Tammy Fitting on September 17, 2026. Dkt. No. 7 ¶ 9; Dkt. No. 6. At the hearing, Petitioner presented evidence of his personal, familial, and economic ties to the United States and Coeur d'Alene, Idaho. Among other things, Petitioner presented evidence that: he has lived in the United States for over two decades with his wife and three U.S.-citizen children; since 2019, he has lived with his family in the same Coeur d'Alene home, which he owns and to which he will return upon release on bond; he owns other assets including an automobile; close friends, United States citizens and business owners, have agreed to act as his bond sponsors and materially support Petitioner; he has worked, paid taxes, and has no criminal history; his wife and three children depend on him for material and emotional support, and so do his legal permanent resident parents and other members of his extended family. Dkt. No. 1-1 at 13–67; Dkt. No. 6. Petitioner also presented evidence, in the form of Petitioner's sworn declaration about the events of his July 10, 2026 arrest by ICE that contradicted aspects of the narrative presented in the Form I-213.[1] Dkt. No. 1-1 at 22–23; Dkt. No. 6. In his sworn declaration, Petitioner describes:

[1] Petitioner's counsel also attempted to offer live testimony from Petitioner during the hearing, but the IJ instructed him to proffer instead. Dkt. No. 6 at 3:20 to 3:31.

> Before arriving at work, I made a brief stop to pick up some materials I needed to perform my job. … While I was at that location, I observed several vehicles near me, but I never thought they were immigration agents. As I returned to my vehicle, several people quickly approached me, pulled me out of the car by force, threw me to the ground, and detained me. At that moment, they asked me why I had not stopped my vehicle when they had activated their emergency lights. I explained honestly that I had never experienced a situation like that before, that I had never been stopped by authorities, and that I did not understand those lights were directed at me.

Dkt. No. 1-1 at 22.

At the bond hearing, the Government presented as evidence a copy of the Form I-213. Dkt. No. 6; *see* Dkt. No. 5-2. The Government argued that Petitioner's 2002 entry and 2005 reentry into the country, his "speculative" relief from removal, and his conduct during ICE's arrest made Petitioner a flight risk. Dkt. No. 6. The Government's only evidence of Petitioner's arrest conduct was the Form I-213's narrative, which describes Petitioner as initially "fail[ing] to yield" when ICE officers "initiated a vehicle stop … by activating emergency light and sirens"; and then, once Petitioner stopped and "Officer's [sic] approached the vehicle, opened the driver's door, and issued loud verbal commands to [Petitioner] to exit the vehicle," describes Petitioner as "not comply[ing]," "refus[ing] to exit," and "continu[ing] to resist" as ICE officers "used control techniques to remove [him] from the vehicle and bring him to the ground," "secure[d] his arms and place[d] him in handcuffs." Dkt. No. 5-2 at 3–4; Dkt. No. 6. At the hearing, the Government did not proffer the testimony of any person who witnessed Petitioner's arrest nor any video or audio footage, or other direct evidence, of the arrest. *See* Dkt. No. 6.

IJ Fitting found that Petitioner was not a danger to the community. Dkt. No. 6; Dkt. No. 5-5. However, IJ Fitting found Petitioner was a flight risk based on Petitioner's unlawful entries in 2002 and 2005, the speculative nature of Petitioner's relief, and Petitioner's arrest conduct. Dkt. No. 6. IJ Fitting did not discuss any other evidence with respect to her determination that Petitioner

was a flight risk. *Id.* And on that basis, IJ Fitting denied Petitioner's release on bond. *Id.*; Dkt. No. 5-5.

Petitioner appealed the bond denial to the BIA on September 29, 2026, and that appeal remains pending. Dkt. No. 7 ¶ 9. On October 9, 2026, Petitioner filed the present petition for habeas corpus. Dkt. No. 1. Petitioner remains in detention at the NWIPC. Dkt. No. 7 ¶ 11.

## II. ANALYSIS

To succeed on a habeas petition, a petitioner must show he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241. "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

The Government argues that the Court should require Petitioner to exhaust administrative remedies before considering the habeas petition on its merits. Dkt. No. 4 at 4–11. And if not, it argues, the Court should at least wait until IJ Fitting issues a written bond memorandum before the Court reviews the habeas petition. *Id.* at 2, 5–7. While the Government has filed an audio recording of the September 17, 2026 bond hearing before IJ Fitting (Dkt. No. 6), the Government appears to admit that there is "the absence of a comprehensive explanation of the IJ's bond denial," and therefore, it maintains that "a bond memorandum is necessary to develop the record and clarify the IJ's reasoning." Dkt. No. 4 at 5–6.

These arguments are neither new, nor persuasive; they have been rejected numerous times by this Court and others in this district and circuit. As Chief Judge Estudillo recently wrote, this is a "familiar fact pattern in which a detained noncitizen is left to wonder the reasons why an IJ

denied their bond request, and a familiar argument by [the Government] that a detained individual should be required to exhaust administrative remedies to learn the reasons why their bond request was denied." *Barragan Jimenez v. Hernandez*, No. 26-CV-02992-DGE, 2026 WL 2859168, at *2 (W.D. Wash. Sept. 23, 2026) (collecting cases); *see also Singh v. Warden, Golden State Annex Detention Facility*, No. 26-CV-01973-DAD-CSK, 2026 WL 1328588, at *6 (E.D. Cal. May 13, 2026) (collecting cases). While the Court "appreciates that the caseload in the immigration courts is likely overwhelming," "it is still necessary for petitioners to be granted meaningful and fair consideration, and for the IJ to explain her decision to enable review of whether that decision was an abuse of discretion." *Lopez Santana v. Marin*, No. 26-CV-00915-DJC-JDP, 2026 WL 1179732, at *2 (E.D. Cal. Apr. 30, 2026). And an after-the-fact written memorandum cannot cure "the fundamental legal error of failing to provide any reasons or apply the *Guerra* factors at the hearing itself." *Ascencio-Zetino v. Scott*, No. 26-CV-02856-DGE, 2026 WL 2686835, at *4 (W.D. Wash. Sept. 14, 2026). "The Court has no doubt that IJs, including IJ Fitting, are capable of applying the *Guerra* factors and explaining the basis for their findings on the record at bond hearings," but if they continue to issue bond denial orders with no such explanation, "the IJs and [the Government] can expect the Court will continue to grant habeas relief." *Vasquez v. Scott*, No. 26-CV-02515-DGE, 2026 WL 2285535, at *5 (W.D. Wash. Aug. 7, 2026).

Accordingly, the court rejects the Governments arguments on this point and waives prudential exhaustion in light of the irreparable injury that results from the continued unlawful detention the petition alleges. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004); *see also Garcia Ortiz v. Henkey*, No. 26-cv-00043-BLW, 2026 WL 948275, at *3 (D. Idaho Apr. 7, 2026) (waiving administrative exhaustion requirements because "given the broader irregularities in bond hearings across the country … administrative remedies in the immigration system appear no longer efficacious").

The Court now turns to the merits of the habeas petition. Petitioner received a bond hearing before IJ Fitting on September 17, 2026. The question presented in the habeas petition is whether the bond hearing and resulting bond decision pass constitutional muster.

A district court reviews an IJ's bond determination as to dangerousness and flight risk for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024). When reviewing for abuse of discretion, the district court does not reweigh the evidence, but determines whether the IJ applied the correct legal standard. *See id.* at 785.

In making bond determinations, IJs consider the so-called "*Guerra* factors":

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). While an IJ is not required to "discuss each piece of evidence submitted" in assessing flight risk, an IJ's "fail[ure] to mention highly probative or potentially dispositive evidence" is a "red flag[]" that undermines the assumption that the IJ considered the evidence and applied the correct standard. *Martinez*, 124 F.4th at 785. An IJ commits an abuse of discretion where the IJ's flight-risk determination is "arbitrary, irrational, or contrary to law." *Bonilla v. Lynch*, 840 F.3d 575, 581 (9th Cir. 2016).

Petitioner contends that IJ Fitting abused her discretion because she failed to apply the *Guerra* factors and "gave no mention—let alone consideration—to the … evidence [Petitioner] submitted in support of release." Dkt. No. 1 at 10. Petitioner argues that Petitioner "put forth substantial record evidence, which could not, as a matter of law, have led to the conclusion that he

is a flight risk." *Id.* at 14. The Government makes no argument to the contrary (*see* Dkt. No. 4); as the Court previously noted, the Government effectively concedes that IJ Fitting provided no sufficient explanation for her flight-risk finding and denial of bond at Petitioner's bond hearing. *See id.* at 5–6.

For the same reasons identified in *Jolon Puac*, *Godinez Godinez*, and *Rivera Rivera*, among others, the Court finds IJ Fitting abused her discretion when she denied Petitioner's bond request based solely, and without any explanation, on Petitioner's decades-old unlawful entries into the country, the speculative nature of his relief, and a Form I-213's disputed and uncorroborated hearsay account of his arrest conduct. *See Jolon Puac v. Hernandez*, No. C26-3739-KKE, 2026 WL 3216902, at *4–5 (W.D. Wash. Oct. 27, 2026); *Godinez Godinez v. Warden-Facility Administrator of Ne. Processing Ctr.*, No. C26-3069-KKE, 2026 WL 3000920, at *3–4 (W.D. Wash. Oct. 6, 2026); *Rivera Rivera v. Warden/Facility Administrator*, No. C26-3544-KKE, 2026 WL 3093302, at *4 (W.D. Wash. Oct. 16, 2026). Such a basis is legally insufficient. *See id.* Moreover, IJ Fitting failed to engage with the evidence before her that was highly relevant to the *Guerra* factors—evidence such as Petitioner's decades-long residence in the United States and fixed address in Coeur d'Alene, his extensive family ties to the country, that Petitioner's children are United States citizens which may entitle him to reside permanently in the country, his lack of criminal record, and his long history of employment and paying taxes.

Because the Court finds that the IJ did not apply the correct legal standard and the record unequivocally contradicts the IJ's flight-risk finding, the Court concludes that the IJ abused her discretion in denying bond. Petitioner's continued detention would serve no immigration purpose, and the Court will order Petitioner's release. *See Garcia Miranda v. Hernandez*, No. 26-cv-00906-JNW, 2026 WL 1328227, at *4–5 (W.D. Wash. May 13, 2026); *Escalante Perez v. Hernandez*, No. C26-0956 TSZ, 2026 WL 1004559, at *2 (W.D. Wash. Apr. 14, 2026).

## III. CONCLUSION

For these reasons, the Court GRANTS the habeas petition. Dkt. No. 1. The Court further ORDERS:

(1) The Government shall release Petitioner no later than November 3, 2026, on reasonable conditions of supervision.

(2) The Government shall file a status report no later than November 5, 2026, confirming compliance with this order.

(3) Petitioner shall not be re-detained during the pendency of his immigration proceedings, absent urgent circumstances, without pre-deprivation notice and an opportunity to be heard in front of an Immigration Judge. At such hearing, the Government shall bear the burden of proof to justify re-detention by clear and convincing evidence.

(4) Petitioner is granted leave to seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and any other basis justified under law. Any fee petition shall be filed within the deadlines set forth by the EAJA.

Dated this 2nd day of November, 2026.

Kymberly K. Evanson
United States District Judge